**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK**

**UNITED STATES OF AMERICA**          **Criminal No.  3:17-CR-63 (TJM)**

   **v.**

**JUSTIN CRANDALL,**

          **Defendant.**

---

**GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S
OMNIBUS MOTIONS**

**Introduction**

Defendant Justin Crandall has filed his omnibus motion.  The only motions that Justin Crandall specifically makes in his omnibus filings are motions:

1) to suppress physical evidence found inside and seized from his residence at 240 Bird Avenue Sidney, New York 13838 pursuant to the First search warrant obtained and executed for said residence-----this First search warrant was issued on February 11, 2017 (this complete search warrant application, affidavit, search warrant, and exhibits are attached herein as Exhibit 1)[1];  defendant's motion to suppress physical evidence pursuant to a search warrant only relates to this First search warrant for the residence issued on February 11, 2017----defendant does not attack any other search warrants in this case and he does not seek to suppress any evidence obtained from other search warrants;

---

[1] The Exhibit 1 documents are being filed under seal in order to further protect the identities of the victim, the victim's family, and witnesses in this case.

1

    2) to suppress Justin Crandall's cell phone which was observed in plain view in

    defendant's vehicle and seized in order to preserve the cell phone while a search

    warrant was obtained to search the cell phone.

The government opposes in all respects Justin Crandall's motions to suppress physical evidence as summarized above and as set forth in his omnibus motion papers.  Defendant's motions to suppress physical evidence seized from his residence pursuant to the First search warrant and the seizure of his cell phone in plain view in his vehicle are all without merit and should be denied.

The government does however consent to a suppression hearing being held before jury selection where facts and evidence will be fully developed in order for this Court to intelligently rule on the issues concerning the First search warrant for the residence and the seizure of defendant's cell phone in plain view in his vehicle.  A hearing is necessary, at least on the cell phone seizure issue.  At such a hearing, facts will be presented to the Court by way of witnesses and physical exhibits.  It is the government's position that all physical evidence obtained from the First search warrant for the residence and the seizure of defendant's cell phone in plain view were lawfully obtained and in conformity to the U.S. Constitution and the case law interpreting the U.S. Constitution.  The testimony and evidence at such a hearing will support the government's position that defendant's suppression motions have no merit.

Defendant does not make any other motions and he does not make any other suppression motions to suppress any other evidence or statements.  Defendant makes no motions to suppress any of the other several search warrants issued in this case.  Likewise, defendant makes no motions to suppress his confession made to law enforcement.  Having made no other motions to suppress any of the other several search warrants or to suppress his confession to law

enforcement, defendant has waived and forfeited the right to make such motions.  The

government therefore does not address any of the other several search warrants and any other

evidence including defendant's confession to law enforcement.  In sum, we only respond to and

address defendant's specific two suppression motions as cited above.

The government opposes all of defendant's motions and arguments.  Unless specifically

adopted in our response, we deny and oppose all of defendant's arguments and allegations.

**The Indictment**

On March 17, 2017, a federal grand jury filed an indictment against defendant Justin

Crandall and Jessica Crandall.  As to defendant Justin Crandall, the grand jury filed a 7 count

indictment.  The indictment as filed reads as follows:

COUNT 1
[Conspiracy to Sexually Exploit a Child]

From in or about November of 2016 through on or about February 13, 2017, in Delaware

County, in the Northern District of New York, defendants JUSTIN CRANDALL and JESSICA

CRANDALL conspired with each other to use V-1, a minor born in 2015 whose identity is known

to the grand jury, to engage in sexually explicit conduct for the purpose of producing one ore more

visual depictions of such conduct, knowing and having reason to know that such visual depictions

would be transported and transmitted using a means and facility of interstate and foreign commerce

and in and affecting such commerce, where such visual depictions were produced using materials

that had been mailed, shipped, and transported in and affecting interstate and foreign commerce

by any means, including by computer, and where at least one such visual depiction was actually

transmitted using any means and facility of interstate and foreign commerce and in and affecting

interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a)  &

(e).

COUNTS 2 - 6
[Sexual Exploitation of a Child]

On or about the dates listed below, in Delaware County, in the Northern District of New York, defendants JUSTIN CRANDALL and JESSICA CRANDALL, used V-1, a minor born in 2015 whose identity is known to the grand jury, to engage in sexually explicit conduct for the purpose of producing one ore more visual depictions of such conduct, knowing and having reason to know that such visual depictions would be transported and transmitted using a means and facility of interstate and foreign commerce and in and affecting such commerce, and where such visual depictions were produced using materials that had been mailed, shipped, and transported in and affecting such commerce by any means, including by computer, and where at least one such visual depiction was actually transmitted using any means and facility of interstate and foreign commerce and in and affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 2251(a) & (e) and 2(a).

| Count | Date | Minor |
|---|---|---|
| 2 | January 16, 2017 | V-1, a minor child born in 2015 |
| 3 | January 30, 2017 | V-1, a minor child born in 2015 |
| 4 | February 1, 2017 | V-1, a minor child born in 2015 |
| 5 | February 6, 2017 | V-1, a minor child born in 2015 |
| 6 | February 7, 2017 | V-1, a minor child born in 2015 |

COUNT 7
[Distribution of Child Pornography]

On or about February 9, 2017, in Delaware County, in the Northern District of New York, defendant JUSTIN CRANDALL, knowingly distributed child pornography, using a means and facility of interstate and foreign commerce shipped and transported in and affecting interstate and foreign commerce by any means, including by computer, in that the defendant sent a text message to Individual A, a person whose identity is known to the grand jury, by using the Internet and a

4

cellular telephone containing a graphic image file depicting V-1 engaged in sexually explicit conduct, in violation of Title 18, United States Code, Sections 2252A(a)(2)(A) & (b)(1).

FORFEITURE ALLEGATION

1.  The allegations contained in Counts 1-7 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 2253.

2.  Pursuant to Title 18, United States Code, Section 2253, upon conviction of one or more offenses in violation of Title 18, United States Code, Sections 2251 or 2252A, the defendants, JUSTIN CRANDALL and JESSICA CRANDALL, shall forfeit to the United States of America any property, real or personal, used or intended to be used to commit or to promote the commission of the offenses.  The property to be forfeited includes, but is not limited to, the following:

  a.  One black colored Samsung Cellular Telephone with SD card, Model #: SM-S120VL, Serial #: GPSAS120VCB, IMEI #: 359259071509110.

3.  If any of the property described above, as a result of any act or omission of the defendant:

  a.  cannot be located upon the exercise of due diligence;

  b.  has been transferred or sold to, or deposited with, a third party;

  c.  has been placed beyond the jurisdiction of the court;

  d.  has been substantially diminished in value; or

  e.  has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section

2253(b) and by Title 28, United States Code, Section 2461(c).

**The Facts**

On February 11, 2017, the New York State Police (NYSP) received a complaint from B.K. in which he reported he had received an image of a minor child engaged in a sexual act via the Google Voice Text Messaging Service on February 8, 2017 or February 9, 2017.  B.K. told the NYSP that he received this image from an old acquaintance of his named JUSTIN D. CRANDALL from the cellular telephone number (XXX) XXX-5582.  B.K. told the NYSP that JUSTIN CRANDALL'S cell phone was (XXX) XXX-5582 and that CRANDALL communicated with him using that cell phone and sent that image from that cell phone to B.K. B.K. described the image as an erect male's uncircumcised penis resting on the face of a minor female in which the minor female's hand was holding the male's penis.  B.K. told the NYSP that he believed the erect male's uncircumcised penis depicted in the image was JUSTIN D. CRANDALL'S penis since he and JUSTIN D. CRANDALL exchanged several naked images of themselves from the waist down over the last two years.  B.K. stated that he did not recognize the minor female depicted in the image but told the NYSP that the minor female depicted in the image had blonde hair and appeared to be approximately between the ages of 3 and 8.

After receiving this image of this minor from JUSTIN D. CRANDALL, B.K. told the NYSP that he became concerned for the safety of the minor female depicted in the image.  B.K. told the NYSP that he recalled having text message conversations with JUSTIN D. CRANDALL in January 2017 during which JUSTIN D. CRANDALL told him that he had a "little whore" he was in the process of training.  During these conversations, JUSTIN D. CRANDALL told B.K. that his wife babysat for the "little whore."  JUSTIN D. CRANDALL informed B.K. he was trying to get "her" to open her mouth and perform oral sexual contact on JUSTIN D.

CRANDALL'S penis.  In addition, JUSTIN D. CRANDALL described how he had ejaculated on "her" face and had attempted vaginal sexual intercourse on "her."  JUSTIN D. CRANDALL reported to B.K. that "she" was too tight to insert his penis all the way into "her" vagina but far enough to insert just the head of his penis into "her" vagina and ejaculate.  B.K. told the NYSP that these communications with  JUSTIN D. CRANDALL occurred over JUSTIN D. CRANDALL's cell phone (XXX) XXX-5582.

Besides these sexual activities, JUSTIN D. CRANDALL told B.K. that he was trying to "whore her out."  At that time, JUSTIN D. CRANDALL asked B.K. to locate a "creepy old man who might be into that kind of thing and has a bunch of money."  B.K. told the NYSP that he was not sure who "her" and "she" was throughout these text message conversations with defendant.  At first, B.K. believed JUSTIN D. CRANDALL was describing a sexual fantasy or an old ex-girlfriend who was willing to engage in sexual activities.  However, after observing the image JUSTIN D. CRANDALL sent via his cell phone to B.K. of the minor female, B.K. then believed JUSTIN D. CRANDALL was describing the minor female depicted in the image throughout their conversation in January 2017.

Following the interview with B.K., B.K. provided the New York State Police written consent to conduct a search of his Hewlett-Packard (HP) Pavilion Elite desktop computer.  B.K. told the NYSP that the text messaging conversations and the image of the minor female sent by JUSTIN D. CRANDALL via defendant's cell phone were still preserved within the Google Voice software on B.K.'s computer.  After obtaining written consent, members of the New York State Police reviewed these text messaging conversations between JUSTIN D. CRANDALL and B.K., which occurred over JUSTIN D. CRANDALL's cell phone, and also the image of the minor female as sent by JUSTIN D. CRANDALL via his cell phone, and as described by B.K.

during his interview.  The New York State Police were able to confirm the content and nature of the text message conversations between B.K. and JUSTIN D. CRANDALL as well as the image of the minor child sent by JUSTIN D. CRANDALL via his cell phone.  The New York State Police documented these text messages and the image of the minor child with digital photography before seizing B.K.'s HP Pavilion Elite desktop computer for forensic extraction and analysis.

After speaking with B.K. on February 11, 2017, the New York State Police applied for a search warrant to search the residence of JUSTIN D. CRANDALL and his wife, JESSICA L. CRANDALL, at 240 Bird Avenue Sidney, New York 13838.  Attached herein as Exhibit 1 is that search warrant packet.  The only motion defendant makes as to this search warrant is a motion to suppress physical evidence seized from the residence.[2]  Although this search warrant contains a "no knock" provision in connection to the residence, law enforcement did NOT implement or use the "no knock" provision.  Upon arriving at this residence, law enforcement knocked on the house door and waited until JESSICA CRANDALL answered and opened the door.  At no time did law enforcement make entry into this residence prior to JESSICA CRANDALL answering and opening the door to this residence.  After JESSICA CRANDALL answered and opened the door to the house, law enforcement identified themselves to her and informed her that they had a search warrant to search the residence.  JESSICA CRANDALL was

---

[2] This First search warrant for the residence is the only search warrant as to which defendant seeks to suppress physical evidence and only as to the search of the residence.  Defendant's only argument relates to the "no knock" provision of this search warrant for the residence.  Defendant does not argue nor seek to suppress any of the other locations also authorized to be searched in this search warrant.  Defendant articulates no facts to support suppression of any of the other places described in this warrant.  Additionally, defendant has made no motions nor submitted any arguments to suppress any other search warrants in this matter.  There were several other search warrants obtained in this matter and since no motions were made to suppress any of those search warrants, the government does not address any of those other search warrants.

cooperative with law enforcement.  After identifying themselves as law enforcement and after JESSICA CRANDALL had opened and answered the residence door, law enforcement then entered the residence in an orderly fashion to conduct their search of the residence.

Shortly thereafter JUSTIN D. CRANDALL arrived home in a vehicle driven by JUSTIN CRANDALL.  He parked/stopped his vehicle on the street near the residence.  Law enforcement officers approached him and the vehicle that he drove.  JUSTIN CRANDALL was taken into custody.  During this contact, the New York State Police observed in plain view in the vehicle JUSTIN CRANDALL's black colored cellular telephone, further identified as a Samsung Cellular Telephone, Model #: SM-S120VL, IMEI #: 359259071509110.  The NYSP retrieved his cell phone that was in plain view inside the vehicle and secured it.

At the point in time when law enforcement came into contact with JUSTIN CRANDALL on February 11, 2017 and when they observed his cell phone in plain view inside the vehicle that JUSTIN CRANDALL drove, law enforcement:

      1.    Already had probable cause to arrest JUSTIN CRANDALL based upon all of the information provided to them by B.K. and having reviewed communications between B.K. and JUSTIN CRANDALL including the sexually explicit image of the minor sent by JUSTIN CRANDALL over his cell phone to B.K.;

      2.    already knew and had probable cause to believe that JUSTIN CRANDALL had used his cell  phone to distribute child pornography to B.K. and also that JUSTIN CRANDALL had used his cell phone to communicate with B.K. about finding someone to pimp out the minor for money;

3.      already had probable cause to seize and take custody of JUSTIN CRANDALL's cell phone which he had used to distribute child pornography and to communicate with B.K. regarding the sexual exploitation of the minor in the image;

4.      already knew that JUSTIN CRANDALL's cell phone was evidence of the commission of a crime and contained evidence of the commission of a crime;

5.      already knew that JUSTIN CRANDALL had in his possession or with him his cell phone;

6.      already knew that the cell phone in the vehicle in plain view was in fact JUSTIN CRANDALL's cell phone;

7.      Observed JUSTIN CRANDALL's cell phone in plain view inside the vehicle at the time that JUSTIN CRANDALL was taken into custody;

8.      Had a legal right to take custody and to secure JUSTIN CRANDALL's cell phone which was in plain view inside the vehicle that JUSTIN CRANDALL had driven to his residence and was in the immediate area where JUSTIN CRANDALL was taken into custody.[3]

---

[3] JUSTIN CRANDALL's cell phone was seized and secured from his vehicle where it was observed in plain view and as to which law enforcement had probable cause to seize and secure it. It was not searched at that time. Law enforcement obtained search warrants sometime later authorizing the search of that cell phone. Defendant does not move to suppress the search warrants authorizing the search of the cell phone. Defendant's only motion, as it relates to this cell phone, solely seeks to suppress its initial seizure and taking into custody at the time law enforcement observed it in plain view inside the vehicle. When the cell phone was eventually searched pursuant to a separate search warrant, recovered from the phone were videos and images showing JUSTIN CRANDALL and JESSICA CRANDALL sexually torturing and sexually molesting the 17 month old child.

JUSTIN D. CRANDALL voluntarily agreed to be interviewed and was transported to the New York State Police, Sidney Station, located in Sidney, New York.  After being advised of his Miranda Warnings and Rights, JUSTIN D. CRANDALL waived his rights and voluntarily provided the following information in a video/audio recorded interview:

1.    During the course of the interview, the New York State Police explained to JUSTIN D. CRANDALL some of the sexually implicit text messages provided by B.K. which JUSTIN D. CRANDALL had sent to him. JUSTIN D. CRANDALL told the NYSP that he recently took and sent the image of his erect penis resting on the face of his neighbor's minor female child via text message over his cell phone.  JUSTIN D. CRANDALL admitted and confirmed that the minor female child's hand was touching his erect penis in the image that he sent via his cell phone to B.K. Although JUSTIN D. CRANDALL claimed he did not know the name of the minor female child depicted in the image, JUSTIN D. CRANDALL told the NYSP that the minor female child's mother was named (he provided her first name) and they lived next door to him and his family. JUSTIN D. CRANDALL confessed that his cellular telephone, identified as a Samsung cellular telephone, contained three images of the minor female child.  Besides the minor female child, JUSTIN D. CRANDALL reported his cellular telephone may contain other images of his youngest daughter unclothed, images he took because his daughter was gaining weight.

2.      JUSTIN D. CRANDALL confessed and admitted that he touched the

minor female child in a sexual manner when he was under the influence of

methamphetamine. Specifically, when asked if he had engaged in "sex"

with the minor female child, JUSTIN D. CRANDALL asked to define the

term, "sex."  When provided with a definition, JUSTIN D. CRANDALL

denied placing his penis inside of the minor female child's mouth or

vagina and ejaculating on the minor female child, but instead confessed

that he placed his penis on the top of the minor female child's vaginal

area.

Following the interview of JUSTIN D. CRANDALL, the New York State Police arrested

JUSTIN D. CRANDALL and charged him with Rape in the First Degree in violation of New

York State Penal Code, Section 130.35, among other criminal violations.

On February 12, 2017, the New York State Police interviewed the mother of the victim

minor female child-----the minor female child that JUSTIN CRANDALL photographed using his

cell phone as he placed his erect penis on the mouth of the female minor child, and then sent that

image via texting using his cell phone to B.K.  (the image that the NYSP recovered on B.K.'s

digital device).  The mother informed the NYSP that her minor female child was approximately

17 Months old during the time that JUSTIN CRANDALL AND JESSICA CRANDALL sexually

tortured and sexually molested her daughter.  The mother told the NYSP that JESSICA L.

CRANDALL and her husband JUSTIN D. CRANDALL began babysitting the 17 month old

victim on Monday evenings after the Thanksgiving holiday in November 2016 and they

continued to do so up until February 11, 2017.

The mother told the NYSP that recently she noticed some changes in the 17 month old's behavior.  The mother stated that the 17 month old victim tended to cling more to her when she dropped off the child at JUSTIN and JESSICA CRANDALL'S residence, and especially when JUSTIN D. CRANDALL was present.  In addition, the mother recently noticed an unexplained mark, similar to a scratch, on the 17 month old's right cheek and a bite mark on her left arm. When the mother picked up her daughter from JUSTIN and JESSICA CRANDALL'S residence, she noticed the injuries and concealing makeup on her daughter's face.  When the mother asked JESSICA L. CRANDALL what occurred, JESSICA L. CRANDALL responded that her son had bit the 17 month old in the arm and threw something at her face.

In addition to these injuries, the mother told the NYSP that she uncovered several other bruises or marks on the 17 month old's body in places such as her head, the upper thigh of her right leg, her left upper thigh, and her butt.  The mother advised that she was extremely upset and immediately contacted JESSICA L. CRANDALL.  JESSICA L. CRANDALL'S tone was very defensive and she informed the mother that she treated the 17 month old minor female as one of her own children.

Lastly, the mother told the NYSP that in the past couple of days the 17 month old child had been wetting her diapers at a greater frequency and had showed some defiance and discomfort when trying to wipe her daughter's vaginal and anal areas.  The mother told the NYSP that her daughter now tightly clenched her legs together when she produced fecal matter making it very extremely difficult to clean the 17 month old child's anal area appropriately.  The mother told the NYSP that she sensed it was almost as if the 17 month old child did not want anyone touching her private areas at all.

On February 13, 2017, JUSTIN D. CRANDALL'S wife, JESSICA L. CRANDALL, was contacted by the New York State Police and agreed to be interviewed at the New York State Police, Sidney Station, in connection with the investigation.  After being advised of her Miranda Warnings and Rights, JESSICA L. CRANDALL waived her rights and voluntarily provided the following information during a video/audio recorded interview:

JESSICA CRANDALL told the NYSP that beginning in or around December of 2016, JUSTIN D. CRANDALL and JESSICA CRANDALL engaged in repeated sexual activities with their neighbor's minor female child, the 17 month old female child, while JESSICA L. CRANDALL and JUSTIN D. CRANDALL babysat the child at their residence located in Sidney, New York.  JESSICA L. CRANDALL told the NYSP that the sexual abuse began when JUSTIN D. CRANDALL attempted to place his penis into the 17 month old child's mouth.

JESSICA L. CRANDALL told the NYSP that on January 2, 2017 JUSTIN D. CRANDALL attempted to place his penis in the 17 month old child's mouth and then spat on her.  Since he could not insert his penis into her mouth, JUSTIN D. CRANDALL attempted to place his penis inside the 17 month old child's vagina after he spat on his erect penis as well as the child's vagina for lubrication.  JESSICA L. CRANDALL told the NYSP that JUSTIN D. CRANDALL was unable to place his penis inside of the 17 month old child's vagina because the child was clenching her legs in pain and discomfort.  JESSICA L. CRANDALL further told the NYSP that she watched these activities as they occurred and she masturbated as JUSTIN CRANDALL did these things to the 17 month old child.  JESSICA L. CRANDALL also told the NYSP that she watched JUSTIN D. CRANDALL as he masturbated and then ejaculated on the 17 month old child's stomach area.

JESSICA L. CRANDALL told the NYSP that on January 23, 2017, JUSTIN D. CRANDALL bound JESSICA's legs with a sheet and her hands with Velcro straps from his toolbox.  JESSICA L. CRANDALL also described how JUSTIN D. CRANDALL then also bound the 17 month old child's arms in the same fashion with Velcro, while she lay on the other side of their bed.  JESSICA L. CRANDALL confessed that she performed oral sexual contact on JUSTIN D. CRANDALL while he "moved back and forth" between the 17 month old child and JESSICA L. CRANDALL.  When JUSTIN D. CRANDALL moved toward the 17 month old child's position on the bed, JESSICA L. CRANDALL described how JUSTIN D. CRANDALL struck the child in the head with his erect penis on approximately three separate occasions before JUSTIN instructed JESSICA L. CRANDALL to suck on his erect penis until he climaxed. JESSICA CRANDALL further described how after being untied, JESSICA L. CRANDALL went into the bathroom to clean herself up at JUSTIN D. CRANDALL'S request.  A short time later, JUSTIN D. CRANDALL entered the bathroom carrying the 17 month old child and then placed the child in the bathtub.  JUSTIN D. CRANDALL then ordered JESSICA L. CRANDALL to clean up the 17 month old child and so JESSICA L. CRANDALL gave the child a bath.

JESSICA L. CRANDALL also told the NYSP that on February 6, 2017 she observed a flea or bug in the 17 month old child's hair so she placed mayonnaise in the child's hair as a home remedy.  JESSICA L. CRANDALL stated that JUSTIN D. CRANDALL took a spoonful of mayonnaise and threw it on the 17 month old child and directed JESSICA L. CRANDALL to rub mayonnaise over the child's body.  While JESSICA L. CRANDALL was rubbing the mayonnaise on the child's body, JESSICA L. CRANDALL told the NYSP that she observed JUSTIN D. CRANDALL rubbing his penis over his clothes.  JESSICA L. CRANDALL stated

that she believed JUSTIN D. CRANDALL was sexually aroused while watching JESSICA L. CRANDALL place mayonnaise on the child's body.  JESSICA L. CRANDALL observed JUSTIN D. CRANDALL take a digital photograph of the 17 month old child covered in mayonnaise with his cellular telephone.

JESSICA L. CRANDALL told the NYSP that also  on February 6, 2017 JUSTIN D. CRANDALL performed oral sexual contact on her and then placed the 17 month old child's head in her vaginal area for a period of approximately thirty seconds to one minute.  JESSICA L. CRANDALL stated that she felt the child's nose touch her buttocks as JUSTIN D. CRANDALL pushed the child's face into JESSICA L. CRANDALL'S vagina.  JESSICA L. CRANDALL also stated that while the  child's head was in her vaginal area, JUSTIN D. CRANDALL told her to look up and say "cheese" as he took a digital photograph using his cellular telephone of the 17 month old child situated between JESSICA L. CRANDALL'S spread legs.

JESSICA L. CRANDALL told the NYSP that she knew the child sexual abuse of the 17 month old child was wrong.  JESSICA L. CRANDALL stated that she tried not to orgasm during the sexual activities involving the child.  JESSICA L. CRANDALL informed the NYSP that she allowed the child sexual abuse to occur because JUSTIN D. CRANDALL paid more sexual attention to her when the 17 month old child was involved.

In addition to the sexual abuse of the child, JESSICA L. CRANDALL told the NYSP that JUSTIN D. CRANDALL also engaged in physical abuse on some occasions.  During the first occasion, JESSICA L. CRANDALL stated that JUSTIN D. CRANDALL bit the child when she would not stop crying.  On the second occasion, JUSTIN D. CRANDALL pushed the child and she hit her chin on a stand in the bedroom of their residence.  JESSICA L. CRANDALL stated that the child developed a small bruise on her face.  JUSTIN D. CRANDALL told JESSICA L.

CRANDALL take care of the bruise.  As a result, JESSICA L. CRANDALL placed cosmetic makeup on the child's face in order to conceal the extent of the injury.  JESSICA L. CRANDALL and JUSTIN D. CRANDALL were concerned that the child's mother would locate the injury to the child's face and ask questions.

Following the interview of JESSICA L. CRANDALL, the New York State Police arrested JESSICA L. CRANDALL and charged her with Criminal Sexual Act in the First Degree in violation of New York State Penal Code, Section 130.50, and Endangering the Welfare of a Child in violation of New York State Penal Code, Section 260.10.

**Argument Regarding No Knock Provision In The Search Warrant**

Defendant argues that this search warrant application and affidavit did not adequately support the issuance of the "no knock" provision to this search warrant and that therefore the evidence obtained pursuant to this search warrant should be suppressed.  Defendant does not argue any other aspect of this search warrant.  Defendant therefore has no other issues with this search warrant.  Defendant's sole argument is that this search warrant should not have contained a "no knock" provision and that therefore the evidence must be suppressed.  Defendant's argument is without merit.

First, although the judge issued a "no knock" provision in this search warrant, law enforcement did in fact knock and announce their presence prior to entering the residence.  When executing this search warrant, law enforcement complied with the knock and announce rule.  Although this search warrant contains a "no knock" provision in connection to the residence, law enforcement did NOT implement or use the "no knock" provision.  Upon arriving at this residence, law enforcement knocked on the house door and waited until JESSICA CRANDALL answered and opened the door.  At no time did law enforcement make entry into this residence

prior to JESSICA CRANDALL answering and opening the door to this residence.  After

JESSICA CRANDALL answered and opened the door to the house, law enforcement identified

themselves to her and informed her that they had a search warrant to search the residence.

JESSICA CRANDALL was cooperative with law enforcement.  After identifying themselves as

law enforcement and after JESSICA CRANDALL had opened and answered the residence door,

law enforcement then entered the residence in an orderly fashion to conduct their search of the

residence.  Therefore, the issue that defendant raises is moot.  This search warrant was not

executed in a no knock fashion.  Instead, this search warrant was executed by implementing the

knock and announce rule.  At the hearing, evidence will be presented to demonstrate that the

knock and announce procedure was implemented in this case during execution of this search

warrant.

Second, the application and affidavit sufficiently justified a no knock provision being

included in this search warrant.  At page 8 of the application, the affiant described how computer

material can be readily and quickly destroyed if not immediately seized upon commencement of

the search.  This justified the judge issuing a no knock search warrant.

Third, the U.S. Supreme Court and Second Circuit Court of Appeals have ruled that

suppression is not warranted or required even where the no knock rule is violated during

execution of a search warrant.  See, Hudson v. Michigan, 547 U.S. 586, 126 S.Ct. 2159 (June 15,

2006);  U.S. v. McCloud, 303 Fed.Appx. 916, 2008 WL 5265862  (2d Cir. 2008); U.S. v. Acosta,

502 F.3d 54 2007, WL 2481175 (2d Cir. 2007).  In the CRANDALL case, the knock and

announce rule was not violated, in that, law enforcement did knock and did announce their

presence.  In fact, law enforcement complied with the announce and knock rule, despite the no

knock provision being included in the search warrant.  If the courts have ruled, which they have,

that even where the rule is violated suppression is not required, then suppression in this case is clearly not warranted or required where the rule was not violated even though the warrant authorized a no knock procedure.

Fourth, as the purpose of the exclusionary rule is to deter police misconduct, evidence obtained by police officers acting with objectively reasonable "good faith" reliance on a search warrant issued by a neutral and detached magistrate need not be excluded even though the warrant was flawed in some fashion.  This presumes that the magistrate did not abandon his detached and neutral role, the officers were not dishonest or reckless in preparing their affidavit, or could not have harbored an objectively reasonable belief in the lack of existence of probable cause. United States v. Leon, 468 U.S. 897 (1984) ; Massachusetts v. Sheppard, 468 U.S. 981 (1984) ; United States v. Edwards, 813 F.3d 953 (10th Cir. 2016) ; United States v. Houston, 665 F.3d 991 (8th Cir.) , cert. denied, 132 S. Ct. 2418 (2012) .  It is not necessary to determine if there was probable cause to support the warrant if the agent's conduct clearly falls within the "good faith" exception to the exclusionary rule.  Davis v. United States, 131 S. Ct. 2419 (2011) (search conducted in reasonable reliance on binding precedent later reversed is not subject to exclusionary rule). See also United States v. Pineda-Moreno, 688 F.3d 1087 (9th Cir. 2012), cert. denied, 133 S. Ct. 994 (2013). When officers rely upon a warrant, Messerschmidt v. Mullender, 132 S. Ct. 1235 (2012) , or decide to obtain a warrant is evidence that the officer acted in good faith.  United States v. Reichling, 781 F.3d 883 (7th Cir.), cert. denied, 136 S. Ct. 174 (2015). The Good Faith exception is applicable in this case.  The exclusionary rule is therefore inapplicable for that reason as well.

**Seizure Of Justin Crandall's Cell Phone In Plain View In His Vehicle**

Defendant moves to suppress the seizure of his cell phone from his vehicle which was in plain view at the time of his arrest.  Defendant's motion does not attack the subsequent search warrant obtained to actually conduct the search of the cell phone itself.  Thus, defendant's argument is limited to alleging that police had no right to seize his cell phone in plain view inside the vehicle which he drove to where police were at his residence.  Defendant's argument is without merit.  The evidence to be presented at a hearing will establish that defendant's cell phone was lawfully seized pursuant to the:  1) "automobile warrant exception doctrine";  2) "plain view doctrine";  3) "search incident to arrest doctrine"; and 4) "inevitable discovery doctrine" (and which doctrine counters the need to apply the exclusionary rule).[4]

At the point in time when law enforcement came into contact with JUSTIN CRANDALL on February 11, 2017 and when they observed his cell phone in plain view inside the vehicle that JUSTIN CRANDALL drove to his residence, law enforcement:

1. already had probable cause to arrest JUSTIN CRANDALL based upon all of the information provided to them by B.K. and having reviewed communications between B.K. and JUSTIN CRANDALL including the sexually explicit image of the minor sent by JUSTIN CRANDALL over his cell phone to B.K.;

2. already knew and had probable cause to believe that JUSTIN CRANDALL had used his cell  phone to distribute child pornography to B.K. and also

---

[4] It should be noted that the search warrant to search the residence also authorized the search of vehicles located on the property of this residence.  Because this vehicle arrived and stopped in the street, defendant argues that it is not covered under the search warrant authorization because it was not located on the property of the residence.

already knew that JUSTIN CRANDALL had used his cell phone to communicate with B.K. about finding someone to pimp out the minor for money;

3.      already had probable cause to seize and take custody of JUSTIN CRANDALL's cell phone which they knew he had used to distribute child pornography and to communicate with B.K. regarding the sexual exploitation of the minor in the image;

4.      already knew that JUSTIN CRANDALL's cell phone was evidence of the commission of a crime and contained evidence of the commission of a crime;

5.      already knew that JUSTIN CRANDALL had in his possession or with him his cell phone;

6.       already knew that the cell phone in the vehicle in plain view was in fact JUSTIN CRANDALL's cell phone;

7.      Observed JUSTIN CRANDALL's cell phone in plain view inside the vehicle at the time that JUSTIN CRANDALL was taken into custody;

8.      Had a legal right to take custody and to secure JUSTIN CRANDALL's cell phone which was in plain view inside the vehicle that JUSTIN CRANDALL had driven to his residence and was in the immediate area where JUSTIN CRANDALL was taken into custody.

JUSTIN CRANDALL's cell phone was seized and secured from his vehicle where it was observed in plain view and as to which law enforcement had probable cause to seize and secure it.  It was not searched at that time.  Law enforcement obtained search warrants sometime later authorizing the search of that cell phone.  Defendant does not move to suppress the search warrants authorizing the search of the cell phone.  Defendant's only motion, as it relates to this

cell phone, solely seeks to suppress its initial seizure and taking into custody at the time law enforcement observed it in plain view inside the vehicle having probable cause to believe that it was evidence of the commission of a crime and was used in the commission of a crime.  When the cell phone was eventually searched pursuant to a separate search warrant, recovered from the phone were videos and images showing JUSTIN CRANDALL and JESSICA CRANDALL sexually  torturing and sexually molesting the 17 month old child.

The Automobile Warrant Exception Doctrine

JUSTIN CRANDALL's cell phone which was observed in plain view in his vehicle on February 11, 2017 was properly seized pursuant to the "automobile warrant exception".  Police may search an automobile and the containers within it without a search warrant when they have probable cause to believe it contains contraband or evidence of criminal activity.  California v. Acevedo, 500 U.S. 565, 580 (1991); United States v. Ross, 456 U.S. 798, 804-09 (1982); United States v. Johns, 469 U.S. 478 (1985).  This may include containers belonging to passengers. Wyoming v. Houghton, 526 U.S. 295 (1999).  The search is justified because of the inherent mobility of the vehicle, Pennsylvania v. Labron, 518 U.S. 938, 940 (1996) (per curiam); United States v. Chadwick, 433 U.S. 1, 12 (1977), and because of a reduced expectation of privacy. California v. Carney, 471 U.S. 386, 392 (1985) (the warrant exception also includes motor homes in a "place not regularly used for residential purposes—temporary or otherwise.").  It is irrelevant that police are searching for other evidence; "[I]n the Fourth Amendment context[, t]he reasonableness of a search does not depend on the officer's subjective motivations; the inquiry is, of course, objective." United States v. Edwards, 2014 WL 4977492 (7th Cir. Oct. 03, 2014).  See also United States v. Donahue, 2014 WL 4115949 (3d Cir. Aug. 22, 2014) (a warrantless search of an automobile supported by probable case may be performed even five days after the driver is

arrested and the automobile is impounded); <u>United States v. Williams</u>, 2014 WL 6807217 (D.C. Cir. Dec. 2, 2014). "A warrantless search of a vehicle may be upheld with virtually no inquiry into the facts of the particular case, as whether or not any kind of exigent circumstances claim could plausibly be put forward is totally irrelevant." 2 Crim. Proc. § 3.7(b) (3d ed.).

Police had more than sufficient probable cause to believe that defendant had used his cell phone to commit crimes and that his cell phone was evidence of the commission of crimes and that it contained contraband child pornography.  Police also had more than sufficient information to believe that the cell phone that was in plain view in his vehicle was in fact defendant's cell phone.  Thus, pursuant to the automobile warrant exception doctrine, police were fully authorized to seize defendant's cell phone which they observed in plain view in the vehicle driven by defendant.

<u>Plain View Doctrine</u>

The plain view doctrine also applies in this case and it independently authorized seizure of defendant's cell phone irrespective of the automobile warrant exception doctrine.  Police were justified in seizing defendant's cell phone regardless as to whether it was in plain view in his vehicle or somewhere else------pursuant to the plain view doctrine.  Police had probable cause to seize defendant's cell  phone, as discussed above, and therefore were justified in seizing it once it came into plain view and where police had a right to be in the place where they observed it in plain view.  Seizable items, including contraband, **evidence of a crime**, dangerous properties, and stolen objects that inadvertently come into the view of a lawfully searching police officer may be retained and used as evidence of the criminal conduct to which they relate.  If a law officer (1) is lawfully located in a place where an object may be plainly seen, and (2) the incriminating character of the object is "immediately apparent," and (3) the officer has a lawful

right of access to the object itself, he may seize it even though the evidence is wholly unrelated to the offense which justified the search.  Horton v. California, 496 U.S. 128 (1990); Coolidge v. New Hampshire, 403 U.S. 443 (1971); United States v. Gordon, 741 F.3d 64 (10th Cir. 2014); United States v. Armstrong, 554 F.3d 1159 (8th Cir.), cert. denied, 129 S. Ct. 2805 (2009); Russell v. Harms, 397 F.3d 458 (7th Cir. 2005); 45 Geo. L.J. Ann. Rev. Crim. Proc. 90-96. Thus, where an officer accompanies a student whom he has arrested to the student's room for him to obtain identification, the officer has the right to literally remain at his elbow, and when the officer who is standing in the doorway observes what he recognizes as contraband he may enter and seize the contraband.  Washington v. Chrisman, 455 U.S. 1 (1982).  A container which is lawfully opened by a customs officer and its contents identified as illegal is considered to be in "plain view" and the owner's privacy interest in the item is lost.  The resealing of the package for a controlled delivery and reopening of the container did not violate the Fourth Amendment. Illinois v. Andreas, 463 U.S. 765 (1983).

The "plain view" is used in two different senses within the law of search and seizure. First, it describes non-search observations similar to those discussed under the open fields doctrine.  Second, as first enunciated in Coolidge v. New Hampshire, 403 U.S. 443 (1971), the plain view doctrine allows the warrantless seizure during a lawful search of objects whose incriminating character is obvious.  The authority of the police to make a seizure distinguishes these two uses of the "plain view."  In the first situation, the seizure of the object in plain view would still require a warrant, unless the viewing occurs during a lawful search. See, e.g., Taylor v. United States, 286 U.S. 1, 5-6 (1932).

Non-Search Observations (Visual Surveillance):  "What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."

Katz, 389 U.S. at 351.  This principle explains why peering into a defendant's illuminated room through a six-inch gap beneath the venetian blinds is not a search.  See United States v. Fields, 113 F.3d 313, 321 (2d Cir. 1997); see also United States v. Lee, 274 U.S. 559 (1927) (use of searchlight to see aboard boat did not constitute search); United States v. Ocampo, 650 F.2d 421, 427 (2d Cir. 1981) (use of flashlight to illuminate interior of lawfully-stopped car permissible). The use of binoculars to detect criminal activity is also not necessarily unlawful, if others could make the same unaided observations at a closer distance.  See United States v. Lace, 669 F.2d 46, 50 (2d Cir. 1982).

What might better be called the plain view seizures doctrine, to distinguish it from situations of non-search plain view discussed above, posits that "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." Dickerson, 508 U.S. at 375.  For example, in Texas v. Brown, 460 U.S. 730 (1983) (plurality opinion), the Supreme Court upheld the warrantless seizure of a knotted party balloon containing a powdery substance after an officer stopped a car for a routine license check and saw the driver drop the balloon onto the seat;  see also United States v. Gamble, 388 F.3d 74, 76 (2d Cir. 2004) (ammunition clip in drawer seized in plain view where law enforcement officers were justified in searching drawer pursuant to warrant); United States v. Atherton, 936 F.2d 728, 733 (2d Cir. 1991) (narcotics "buy money was clearly subject to lawful seizure, since it was sitting in 'plain view' on a table in front of the door").

The Second Circuit requires the satisfaction of two conditions to validate a plain view seizure: (1) an initial intrusion that was lawful and (2)  "probable cause to believe that the item seized was evidence of a crime.".  Horton v. California, 496 U.S. 128, 136-37 (1990); Bradway

v. Gonzales, 26 F.3d 313, 318 (2d Cir. 1994).  As to the first of the two criteria, a lawful initial intrusion will be found where undertaken pursuant to a search warrant or a lawful warrantless search.  United States v. $10,000 in U.S. Currency, 780 F.2d 213, 217 (2d Cir. 1986) (upholding seizure of currency and gold bars found during search for narcotics).  To justify a plain view seizure, "[n]ear certainty of the article's criminal character is not necessary."  United States v. Barrios-Moriera, 872 F.2d 12, 15-16 (2d Cir. 1989).  The probable cause standard has led the Second Circuit to conclude, for example, that a "rectangular package, measuring a certain size, wrapped in duct tape, 'spoke volumes as to its [narcotic] contents,' particularly to an experienced DEA agent."  Barrios-Moriera, 872 F.2d at 17; see also Texas v. Brown, 460 U.S. 730, 734 (1983) (officer's observation of a balloon, plastic vials and loose white powder justified plain view seizure).  Similarly, the warrantless seizure of a cassette tape that was clearly labeled was permitted because the label "had the practical effect of putting the contents of the tape in plain view."  United States v. Bonfiglio, 713 F.2d 932, 937 (2d Cir. 1983).

In this case, prior to observing the cell phone police had more than sufficient probable cause to believe that defendant had used his cell phone to commit a crime; sent child pornography using his cell phone; and communicated with another person on his cell phone regarding the sexual exploitation of a 17 month old child.  Thus, when they observed defendant's cell phone in plain view in defendant's vehicle, police were authorized under the plain view doctrine to seize defendant's cell phone.

Search Incident To Arrest Doctrine

Police were also, and independently, justified in this case in seizing defendant's cell phone incident to the arrest of defendant.

"Search incident to arrest" is a well-rooted exception to the search warrant requirement. Police can conduct a warrantless search of an arrestee even if they have no reason to believe that the arrestee possesses weapons or evidence of the commission of a crime or used in the commission of a crime. See New York v. Belton, 453 U.S. 454, 461 (1981); Michigan v. DeFillippo, 443 U.S. 31, 35 (1979); United States v. Robinson, 414 U.S. 218, 235 (1973); Virginia v. Moore, 553 U.S. 164 (2008) (search lawful even if statute did not authorize arrest for the offense). The timing of the search must be reasonable under the circumstances, but it can come immediately before, Rawlings v. Kentucky, 448 U.S. 98, 111 (1980), or a considerable time after the arrest. United States v. Edwards, 415 U.S. 800, 805 (1974) (ten hours).

The scope of the search includes the area within the arrestee's immediate control. See Chimel v. California, 395 U.S. 752, 763 (1969) ("the area from within which [the arrestee] might gain possession of a weapon or destructible evidence"). For example, in United States v. Cook, 808 F.3d 1195 (9th Cir. 2015) it included the search of a backpack next to the defendant, who was handcuffed and face down on the ground.

The officer's subjective reason for making the arrest is immaterial. The search is permitted if the officer has probable cause to arrest for any crime. For example, if, during an encounter, the defendant makes a false statement in violation of 18 U.S.C. § 1001, and the officer has probable cause to believe that the statement is false, it does not matter that the officer lacked probable cause to arrest for the crime the defendant was actually arrested for. United States v. Thompson, 842 F.3d 1002, 1008 (7th Cir. 2016).

"Police who find a cell phone during a search incident to arrest may seize the phone. Unless a Fourth Amendment exception applies, however, they may not search data stored on the

phone without first obtaining a warrant." See <u>Riley v. California</u>, 2014 WL 2864483 (U.S. June 25, 2014).[5]

Pursuant to <u>New York v. Belton</u>, 453 U.S. 454, 461 (1981) and <u>Arizona v. Gant</u>, 129 S.Ct. 1710 (2009) (the Belton and Gant rules), the arrest of an occupant of a vehicle will justify a search of the passenger compartment of a car, and closed containers within it, even after police have exclusive control of the vehicle.  <u>New York v. Belton</u>, 453 U.S. 454, 460, 462 (1981).  This "Belton rule" applies even if the person arrested left the car before the officer approached. <u>Thornton v. United States</u>, 541 U.S. 615 (2004).  Searches of a vehicle incident to arrest of its recent occupant are governed by a two-part rule:  Such a search is permissible if either (1) the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search;  OR (2) the officer has reason to believe that the vehicle contains evidence of the offense of arrest.  In CRANDALL's case police had multiple lawful reasons to look into the vehicle where they observed in plain view the incriminating cell phone belonging to defendant.  Defendant was not yet completely secured; a passenger was still in defendant's vehicle unsecured and could pose a danger to police with a weapon; the passenger could tamper with or destroy evidence within the vehicle compartment; the passenger could drive off with the vehicle; etc.

Even post-Gant, a search incident to arrest may be made when there is a reasonable possibility that the arrestee could access a weapon or destructible evidence in the container or area being searched.  This "remains a lenient standard." <u>United States v. Shakir</u>, 616 F.3d 315,

---

[5] In CRANDALL's case, police did in fact obtain a search warrant to search the phone after they had seized the phone from the vehicle.  Defendant does not seek to suppress evidence obtained from that search warrant.

321 (3d Cir. 2010).  See also United States v. Slone, 636 F.3d 845 (7th Cir. 2011) (reasonable to believe that the vehicle contained evidence of the offense of arrest).

This exception overlaps to a considerable degree with the automobile exception. See United States v. Edwards, 2014 WL 4977492 (7th Cir. Oct. 03, 2014) (arrest for unauthorized use of a motor vehicle justifies search for documents under both exceptions).  The court in Edwards observed that the "offense of arrest" is not limited to the crime for which the defendant was "actually arrested."  It includes other crimes that the officer had probable cause to believe occurred.

In the CRANDALL case, multiple justifications for the seizure of defendant's cell phone from his vehicle, in plain view, incident to his arrest ------in fact apply.  All of them apply.

Inevitable Discovery Doctrine

The inevitable discovery doctrine also applies in the CRANDALL case.  In Nix v. Williams, id., police took a statement from a suspect in violation of his Sixth Amendment right to counsel, but the body found as a result of the statement was held admissible because the police would have found it anyway.  The inevitable discovery doctrine shields illegally obtained evidence from the exclusionary rule if the government can show, by a preponderance of the evidence, that the evidence "ultimately or inevitably would have been discovered by lawful means."  "Would" — not "could" or "might" — is the word the Supreme Court used in Nix v. Williams and is, therefore, the "constitutional standard."  In determining whether discovery was inevitable, the trial court cannot engage in speculation, and must focus exclusively on "demonstrated historical facts capable of ready verification or impeachment." Accordingly, we have said that "the lawful process which would have ended in the inevitable discovery must have commenced before the constitutionally invalid seizure, and there must be the requisite actuality

that the discovery would have ultimately been made by lawful means." Gore v. United States, 2016 D.C. App. LEXIS 313 (D.C. Aug. 18, 2016) (footnotes omitted). See also Georgetown LJ § II (illegally obtained evidence is nevertheless admissible if the evidence would inevitably have been discovered through independent, lawful means); West Criminal Procedure Handbook § 1:108.  Inevitable discovery, an exception to the exclusionary rule closely related to independent source, allows the admission of unlawfully seized evidence when the government can show that the evidence inevitably would have been discovered by lawful means. See Nix v. Williams, 467 U.S. 431, 444 (1984) (refusing to suppress discovery of dead body located through statement taken in violation of right to counsel because search for body already underway when statement was taken). The government must show inevitable discovery by a preponderance of the evidence. See United States v. Cabassa, 62 F.3d 470, 474 (2d Cir. 1995). "The exception requires the district court to determine, viewing affairs as they existed at the instant before the unlawful search, what would have happened had the unlawful search never occurred." United States v. Eng, 971 F.2d 854, 861 (2d Cir. 1992) (Eng I).  The exception is properly applied "only where a court can find, with a high level of confidence, that each of the contingencies necessary to the legal discovery of the contested evidence would be resolved in the government's favor." United States v. Heath, 455 F.3d 52, 60 (2d Cir. 2006).  United States v. Eng, 997 F.2d 987 (2d Cir. 1993) (Eng II) (discovery inevitable where investigation was sufficiently active and ongoing); see also United States v. Malik, 16 F.3d 45, 51 (2d Cir. 1994) (evidence of defendant's handwriting seized in prison cell "could have been compelled to be produced without infringing upon the defendant's constitutional rights"); United States v. Pimentel, 810 F.2d 366, 369 (2d Cir. 1987) (illegally-seized letters would have been uncovered by ongoing audit).  To show inevitable discovery pursuant to a warrant, the government must prove that the warrant would

have been issued and that the evidence illegally seized would have been found under the warrant. United States v. Whitehorn, 829 F.2d 1225, 1230-32 (2d Cir. 1987) (upholding inevitable discovery). The question to be determined is "how likely it is that a warrant would have been issued and that the evidence would have been found pursuant to the warrant." United States v. Christy, 2014 WL 26455 (10th Cir. Jan 3, 2014).

The inevitable discovery rule applies in this case. Even if the initial seizure of defendant's cell phone were not justified, the inevitable discovery doctrine renders the exclusionary rule inapplicable. Defendant's cell phone would have been seized pursuant to a search warrant. Police would have secured the vehicle in place and sought a search warrant to seize defendant's cell phone which was in plain view. Police had more than ample probable cause to believe that defendant's cell phone was used in the commission of a crime. The exclusionary rule is therefore inapplicable.

## CONCLUSION

Defendant's motions to suppress physical evidence are without merit and should be denied. The government does however consent to a suppression hearing being held before jury selection where facts and evidence will be fully developed in order for this Court to intelligently rule on the issues concerning the First search warrant for the residence and the seizure of defendant's cell phone in plain view in defendant's vehicle. A hearing is necessary, at least on the cell phone seizure issue. At such a hearing, facts will be presented to the Court by way of witnesses and physical exhibits. It is the government's position that all physical evidence obtained from the First search warrant for the residence and the seizure of defendant's cell phone in plain view in defendant's vehicle were lawfully obtained and in conformity to the U.S.

Constitution and the case law interpreting the U.S. Constitution.  The testimony and evidence at such a hearing will support the government's position that defendant's suppression motions have no merit.

The government also respectfully requests permission to supplement our response if and when we determine that additional legal arguments apply and are relevant to resolution of the issues presented.  This request is made in order to preserve our ability to provide to the Court relevant arguments that may come to light from additional research or from additional factual analysis.

We respectfully also request permission to file this over the page limit response.

Date: October 10, 2017

Sincerely,

GRANT C. JAQUITH
Acting United States Attorney

*Miroslav Lovric*
Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE FOR ELECTRONIC CASE FILING SYSTEM</u>

I hereby certify that on October 10, 2017, I electronically filed with the NDNY Clerk of the District Court using the CM/ECF system the above-referenced document(s) in connection with the above-referenced case.  The CM/ECF system automatically sent electronic notifications of such filing to the attorneys of record in this case, as maintained by the District Court Clerk's Office, AND who are properly registered in the CM/ECF system for the NDNY as required pursuant to NDNY General Order #22.  As for any attorney of record in this case who is not registered in the CM/ECF system for the NDNY, the government has caused to be mailed or faxed to that attorney either the actual CM/ECF electronic notification/e-mail as received from the CM/ECF system by the government and/or the actual documents being filed.  Therefore, the non-registered attorney(s) will receive the same electronic ECF notice with the same information as will the attorney(s) who is/are registered in the CM/ECF system.


*Miroslav Lovric*
Assistant U.S. Attorney